# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JON E. DEVARY, an individual, | Case No. 09-CV-1146 (PJS/FLN) |
| Plaintiff, | |
| v. | ORDER |
| COUNTRYWIDE HOME LOANS, INC., d/b/a AMERICA'S WHOLESALE LENDER, a California Corp.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corp.; BANK OF NEW YORK, as trustee for CWABS 2005-2; and JOHN & JANE DOES 1-10, | |
| Defendants. | |

Michael J. Keogh, KOEGH LAW OFFICE, for plaintiff.

Eric J. Rucker, BRIGGS & MORGAN, PA, for defendants.

This matter is before the Court on several motions. Plaintiff Jon E. DeVary has moved to remand, moved for a default judgment, and moved to take judicial notice of certain facts. Defendants Countrywide Home Loans, Inc. ("Countrywide") and Mortgage Electronic Registration Systems, Inc. ("MERS") have both moved to dismiss. For the reasons discussed below, DeVary's motions are denied, and defendants' motions are granted in part and denied in part.

## I. BACKGROUND

On January 6, 2005, DeVary refinanced the mortgage on his primary residence by closing on a loan with America's Wholesale Lender ("AWL"), an assumed name of Countrywide. MERS served as Countrywide's nominee. DeVary claims that, at the closing, he received an

adjustable-rate note, a mortgage-security instrument with an adjustable-rate rider, a Truth-in-Lending disclosure statement, a HUD-1 settlement statement, and a single unsigned copy of a notice of his right to cancel the transaction.

Almost three years later, after apparently concluding that the documents that he had received were inadequate in form and inaccurate in content, DeVary sent Countrywide a letter providing notice of his intent to rescind his loan pursuant to § 1635 of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and its implementing rules, known as Regulation Z, 12 C.F.R. § 226. Compl. Ex. 4 at 1 [Docket No. 1-1]. In his December 28, 2007 letter to Countrywide, DeVary claimed that he was entitled to rescind his loan because at closing he had not received "[s]ufficient correct copies of [his] Notice of Right to Cancel under 15 U.S.C. § 1635(a); Reg. Z §§ 226.23(a), and [s]ufficient correct copies of a Truth in Lending Disclosure Statement under Reg. Z §§ 226.23(b)," and because he had not been provided "correct true copies of the Truth in lending Disclosure Statement." *Id*.

DeVary's letter also requested a great deal of information regarding his loan and its servicing. DeVary demanded this information pursuant to § 2605(e)(1)(B) of the Real Estate Settlement Procedures Act ("RESPA"). DeVary characterized his requests for information as qualified written requests ("QWRs") under RESPA, 12 U.S.C. § 2605(e)(2). *Id*. at 2. DeVary's purported QWRs consisted of three unnumbered and 24 numbered requests for information. The three unnumbered requests related to the current ownership of his mortgage and Countrywide's internal policies. The 24 numbered requests[1] related to an assortment of issues, including his

---

[1]The first set of numbered requests in DeVary's letter are labeled 1-15, and the second set are labeled 1-9. For ease of reference, the Court will refer to the second batch of numbered requests as requests 1A-9A.

original loan transaction, the servicing history of his loan, and AWL's relationship to other entities.

Countrywide denied DeVary's rescission request in a letter dated January 28, 2008. Compl. Ex. 5. That letter also purported to enclose "copies of the required notices which were signed and dated by [DeVary] acknowledging receipt of copies of the required notices and disclosures." *Id.* Finally, the letter acknowledged receipt of DeVary's requests for information and indicated that Countrywide would respond separately to those requests.

That separate response came in a letter dated February 8, 2008. Comp. Ex. 4. In that letter, Countrywide stated that it was not obligated under RESPA to answer 19 of the 24 numbered requests for information because those 19 requests did not concern the payment or disbursement of loan funds and did not allege any wrongdoing by Countrywide. Countrywide provided information in response to DeVary's five remaining numbered requests. Countrywide also provided DeVary with the name and phone number of an employee who could provide further assistance. Countrywide said nothing about DeVary's three unnumbered requests.

On May 15, 2008, Bank of New York (which had at some point acquired an interest in DeVary's mortgage) notified DeVary that it would begin foreclosure proceedings in its capacity as "Trustee on behalf of the Certificateholders of CWABS 2005-02." Compl. Ex. 1. Bank of New York commenced foreclosure proceedings because DeVary was apparently in default.

DeVary filed this lawsuit in state court on January 5, 2009, alleging that Countrywide and MERS had violated TILA and Regulation Z by failing to honor his rescission request (Count 1) and by providing inadequate or inaccurate disclosures at the closing (Count 2). DeVary also alleged that defendants had violated RESPA, 12 U.S.C. §§ 2601-2617, by failing to properly

respond to DeVary's purported QWRs (Count 3).  Finally, DeVary contended that defendants violated Minnesota's Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. §§ 325D.43 - 325D.48 (Count 4).

Countrywide and MERS removed the action to federal court in May 2009.  Docket No. 1. DeVary then moved to remand the case to state court [Docket No. 4], and Countrywide and MERS moved to dismiss the case under Rule 12(b)(6) [Docket No. 10].  Both motions were set to be heard on August 25, 2009.

One day before the hearing, DeVary filed an amended complaint that he describes as "basically the same as the original," DeVary Supp. Br. at 16 [Docket No. 45], with two important exceptions.  First, DeVary added Bank of New York as a defendant.  Amended Compl. [Docket No. 26].  Second, DeVary added a claim that in September 2008, after Countrywide had received his rescission request, Countrywide improperly solicited an additional $12,000 from DeVary and misapplied this amount as interest.  Amended Compl. ¶ 55.  The Court has identified a third important difference between the original and amended complaints:  The amended complaint appears to allege a new RESPA violation based on defendants' "refus[al] to cease [their] collection efforts and foreclosure proceedings" after receiving DeVary's notice of rescission and informational requests.  Amended Compl. ¶ 62.

At the August 25 hearing, the Court informed the parties that they would need to submit supplemental briefing on a number of issues as well as evidence on the question of whether Countrywide was properly served.  On September 2, 2009, the Court ordered the parties to file a letter "explaining how they plan to discover and submit the evidence necessary for the Court to determine whether Countrywide was properly served."  Docket No. 29.  The Court directed the

parties to submit the letter by September 8, unless they were engaged in settlement discussions, in which case the letter could be filed later. *Id*. The parties were purportedly still engaged in settlement negotiations on November 5, 2009, when DeVary filed a motion for default judgment against Countrywide and MERS. Docket No. 31. Countrywide, MERS, and Bank of New York filed a joint answer to the amended complaint later the same day. Docket No. 36. On November 9, 2009, the Court ordered the parties to conclude their discovery on the service question by December 31, 2009, and to submit supplemental briefing on a number of factual and legal issues relating to the pending motions. Docket No. 38. On February 4, 2010, after those supplemental briefs had been submitted, DeVary filed a motion to take judicial notice of certain facts relating to his attempt to serve Countrywide. Docket No. 49.

## II. ANALYSIS

### A.  Motion to Remand

DeVary has filed a motion to remand, arguing that the Court lacks subject-matter jurisdiction over this action and that defendants' notice of removal was untimely. DeVary is wrong on both counts. Given that DeVary has sued defendants *under federal law*, the Court obviously has subject-matter jurisdiction over DeVary's federal claims under 28 U.S.C. § 1331 and over his state claims under 28 U.S.C. § 1367. And given that Countrywide was never served with a summons and complaint (as the Court holds below), the time period for Countrywide to file a notice of removal never began to run. *See Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("[W]e hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere

receipt of the complaint unattended by any formal service."). Even if Countrywide had been properly served — and, again, it was not — DeVary waived his right to complain about the timeliness of the notice of removal when he filed an amended complaint (as DeVary now concedes, DeVary Supp. Br. at 11). For all of these reasons, DeVary's motion to remand is denied.

### B. Motion to Dismiss

Defendants have moved to dismiss DeVary's complaint. Before addressing the merits of defendants' motion, the Court first addresses a couple of preliminary arguments made by DeVary.

First, DeVary argues that, because defendants moved to dismiss DeVary's original complaint, and because DeVary thereafter filed an amended complaint, defendants' motion to dismiss is now moot. DeVary is incorrect. As a general rule, a defendant need not file a new Rule 12 motion merely because the plaintiff amended his pleading while the defendant's motion was pending. "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed.) (hereinafter *Federal Practice and Procedure*). In this case, DeVary's amended complaint does not eliminate any of the purported defects in his original complaint, and, in arguing for dismissal of the amended complaint, defendants rely on the same arguments that they made in seeking dismissal of the original complaint. The Court will therefore deem defendants' motions to dismiss to be directed at the amended complaint.

Second, DeVary argues that defendants have waived certain defenses to his amended complaint by failing to comply with Rule 81(c) of the Federal Rules of Civil Procedure. Rule 81(c) prescribes when a defendant who has removed a case from state court must file an answer or Rule 12 motion challenging the complaint. Rule 81(c) is thus similar to Rule 12(a), which prescribes when a defendant who has been sued in federal court must respond to the complaint.

As relevant to this action,[2] Rule 81(c) required Countrywide to file an answer within 20 days after being served with the summons and complaint. *See Murphy Bros.*, 526 U.S. at 355 ("Rule 81(c) sensibly has been interpreted to afford the defendant at least 20 days after service of process to respond."). Because the summons and complaint were never served on Countrywide, Countrywide was never required to file an answer, and thus Countrywide did not violate Rule 81(c). Countrywide has never been in default, and the Rule 12(b)(6) motion that it filed on July 2, 2009 was timely.

MERS's situation is different. MERS does not now contest that it was served with the summons and complaint in January 2009 and was therefore required under Rule 81(c) to answer or file a motion to dismiss the complaint within five days after filing its notice of removal. MERS failed to do so. Because of MERS's failure, DeVary could have asked the Clerk of Court to enter MERS's default under Rule 55(a). DeVary did not do so, however, and on July 2, 2009, MERS joined in the Rule 12(b)(6) motion filed by Countrywide. It appears that, unless a non-answering defendant has been found in default under Rule 55(a), the defendant may file a motion to dismiss under Rule 12(b), even though its time to file an answer has expired. *See Mat-Van,*

---

[2] The Federal Rules of Civil Procedure were extensively amended on December 1, 2009. When discussing events that occurred before then, this Order generally refers to the Civil Rules as they existed prior to December 1, 2009.

*Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912-IEG, 2007 WL 2206946, at *3 (S.D. Cal. July 27, 2007) ("[T]he provisions of the Federal Rules of Civil Procedure do not set a specific deadline for which motions under Rule 12 must be filed. Thus, courts have found Rule 12(b) motions to dismiss are permissible and timely even when filed after an answer was due and without an extension of time." (internal citation omitted)). MERS's Rule 12(b) motion was therefore timely.

In short, nothing done by Countrywide or MERS waived their right to seek dismissal of DeVary's complaint under Rule 12(b)(6).

## 1. Standard of Review

In ruling on a Rule 12(b)(6) motion, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Maki v. Allete, Inc.,* 383 F.3d 740, 742 (8th Cir. 2004). Although the factual allegations in the complaint need not be pleaded in great detail, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl.Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court . . . ." Fed. R. Civ. P. 12(d). Matters outside the pleadings include "'any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings.'" *Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir. 1992) (quoting *Federal Practice & Procedure* § 1366). Before a court can consider such evidence, the court must give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). A district court need not give explicit notice that it intends to

consider materials outside the pleadings; constructive notice is sufficient. *Angel v. Williams*, 12 F.3d 786, 788 (8th Cir. 1993).

At the August 25, 2009 hearing, the Court made clear to the parties that they would need to submit evidence on the question of whether Countrywide had been properly served. In its follow-up Order on September 2, 2009, the Court directed the parties to file a letter "explaining how they plan to discover and submit the evidence necessary for the Court to determine whether Countrywide was properly served." Docket No. 29. Finally, in its Order of November 9, 2009, the Court reminded the parties that "it would need supplemental briefing on a number of issues as well as additional evidence relevant to the question whether Countrywide had been properly served." Docket No. 38. The Court then gave the parties "until December 31, 2009, to conduct discovery relating to the question whether Countrywide was properly served with the initial complaint." *Id.*

The Court thus provided ample notice that it intended to consider materials outside of the pleadings. And, in response, both DeVary and defendants submitted affidavits and exhibits in conjunction with their supplemental briefs on the motion to dismiss. *See* Docket Nos. 25, 42, and 50. Because the parties had notice that the Court would consider matters outside the pleadings, the Court will treat defendants' motion to dismiss as a motion for summary judgment insofar as it relates to the issue of whether Countrywide was properly served — the issue that controls whether DeVary's failure-to-rescind claim is timely (Count 1). The Court will not consider matters outside the pleadings in resolving defendants' motion to dismiss DeVary's claim for non-rescission-related damages pursuant to TILA (Count 2), DeVary's RESPA claim (Count 3), and DeVary's MDTPA claim (Count 4).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### 2. Counts 1 and 2: Were DeVary's TILA Claims Timely?

#### a. Count 1: Failure-to-Rescind Claim

If a lender fails to deliver certain forms or to accurately disclose certain loan terms, TILA permits a borrower to rescind his loan agreement within three years of closing on the loan. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). Under 15 U.S.C. § 1635(b), when a borrower exercises his right to rescind,

> the creditor, within ten days after receiving notice of rescission, [must] return to the borrower all money received from the borrower and [must] take all necessary actions to reflect the termination of any security interest created under the transaction. Once the creditor has performed these duties, the borrower is required to tender any of the loan proceeds received from the creditor. The section is designed to restore the parties to the status quo as closely as possible.

*Bustamante v. First Fed. Savs. & Loan Ass'n of San Antonio*, 619 F.2d 360, 365 (5th Cir. 1980) (internal citations omitted). In general, a borrower has one year to sue a creditor for violating its obligations under § 1635(b). 15 U.S.C. § 1640(e).

DeVary closed on his refinancing with Countrywide on January 6, 2005. On December 28, 2007, DeVary notified Countrywide that he was exercising his right of rescission under TILA, and DeVary identified several alleged inadequacies in the loan documents and related disclosures that he had received at closing. At oral argument, Countrywide conceded that DeVary's notice of rescission was timely under § 1635(f).

In a letter dated January 28, 2008, Countrywide refused to rescind DeVary's loan. Assuming that Countrywide acted unlawfully in refusing DeVary's rescission request, Countrywide's refusal constituted an independent TILA violation, and DeVary had one year to sue Countrywide for that violation. 15 U.S.C. § 1640(e); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) *cert. denied* 539 U.S. 927 (2003).

Countrywide moves to dismiss DeVary's refusal-to-rescind claim, arguing that, because DeVary did not serve his summons and complaint within one year, DeVary's claim is now time-barred by § 1640(e).[3] The Court notes that Countrywide is *not* moving under Rule 12(b)(5) to dismiss DeVary's lawsuit without prejudice for insufficient service of process; Countrywide waived this defense when it moved under Rule 12(b)(6) to dismiss DeVary's complaint for failure to state a claim and did not, at the same time, move for dismissal under Rule 12(b)(5). Fed. R. Civ. P. 12(h)(1). Rather, Countrywide is seeking to dismiss DeVary's refusal-to-rescind

---

[3]MERS also seeks to dismiss the refusal-to-rescind claim on the same grounds. But MERS concedes — or at least does not contest — that it was served with the summons and complaint on or about January 2, 2009, which is within one year of Countrywide's allegedly wrongful refusal to rescind on January 28, 2008. Thus, MERS's motion is denied.

The Court does not understand how *MERS* could be held liable because *Countrywide* refused to honor a request to rescind that was based on *Countrywide's* failure to provide certain documents at closing. But MERS bases its Rule 12(b)(6) motion only on the timeliness of DeVary's action, and thus this issue must await another day.

claim with prejudice and on the merits because the claim is barred by the statute of limitations. Such a request is properly the subject of a Rule 12(b)(6) motion. *Guy v. Swift & Co.*, 612 F.2d 383, 385 (8th Cir. 1980).

DeVary claims that he served a summons and complaint on Countrywide on December 31, 2008, through the Minnesota Secretary of State. Second Keogh Aff. ¶ 15-16 [Docket No. 25]. DeVary appears to have made no other attempt to serve Countrywide. Countrywide argues that because DeVary was not authorized to serve it through the Secretary of State, and because DeVary did not attempt to serve it in any other way, Countrywide was not properly served with the summons and complaint before TILA's statute of limitations expired. The Court agrees with Countrywide.

The validity of service made prior to removal must be judged according to state law. *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir. 2003). Minnesota law permits service of process on a foreign corporation (such as Countrywide) to be made through the Secretary of State in only limited circumstances, two of which are relevant here: First, Countrywide could be served through the Secretary of State if it "fail[ed] to appoint or maintain in this state a registered agent upon whom service of process may be had." Minn. Stat. § 5.25, subd. 4(a)(1). Second, Countrywide could be served through the Secretary of State "whenever a registered agent cannot be found at its registered office in this state, as shown by the return of the sheriff of the county in which the registered office is situated, or by an affidavit of attempted service by a person not a party." Minn. Stat. § 5.25, subd. 4(a)(2).

Countrywide has submitted evidence that, at all relevant times, it maintained CT Corporation Systems, Inc. ("CT Corporation") as its registered agent in Minnesota. Second

Rucker Aff. ¶ 2 [Docket No. 22]. In support of this claim, Countrywide points to its entry on the Minnesota Secretary of State's website, which plainly identifies "C T Corporation System Inc" as Countrywide's "Agent Name" and lists "100 S 5th Str #1075" in "Minneapolis, MN, 55402," as CT Corporation's "Registered Office." Third Rucker Aff. Ex. 1 at 2 [Docket No. 44]. DeVary does not actually deny that Countrywide maintained CT Corporation as its registered agent at all relevant times. DeVary also does not contend that he attempted to serve Countrywide through CT Corporation at its registered office. It therefore seems clear that DeVary was not authorized by Minn. Stat. § 5.25 to serve Countrywide through the Secretary of State.

DeVary's argument to the contrary is rather tortured — and, in the end, unavailing. According to DeVary's attorney, he conducted a "reasonable investigation" that revealed no registered agent for Countrywide in Minnesota. Second Keogh Aff. ¶ 13. DeVary's attorney does not elaborate in any way; he simply assures the Court, without explanation, that his investigation was "reasonable." Thus, DeVary submits no actual evidence — but only argument — to rebut Countrywide's evidence that the location of CT Corporation's registered office could easily have been found.

DeVary's attorney further claims that his investigation *did* disclose "registered offices" for *AWL* — one of the assumed names under which Countrywide did business — in Calabasas, California and at 1907 East Wayzata Boulevard, Suite 200, in Minneapolis, Minnesota. Second Keogh Aff. ¶ 13. On December 5, 2008, a private detective traveled to 1907 Wayzata Boulevard, Suite 200, and found the office vacant. Kost Aff., Second Keogh Aff. Ex. 3 at 1. Moreover, the property's landlord confirmed that Countrywide's lease at that location had expired at the end of November 2008. Gamec Aff., Second Keogh Aff. Ex. 3 at 2. Based on this evidence, DeVary

-13-

contends that he was authorized to serve Countrywide through the Secretary of State because Countrywide's "registered agent [could not] be found at its registered office in this state." Minn. Stat. § 5.25, subd. 4(a)(2).

DeVary is mistaken for several reasons:

First, AWL is not itself a legal entity, such as a corporation or partnership. Rather, AWL is merely an assumed name under which Countrywide did business. Minn. Stat. § 333.01. It is a label — a marketing tool.

Second, a foreign corporation (such as Countrywide) that is doing business in Minnesota under an assumed name must maintain a registered agent in Minnesota. But nothing in Minnesota law requires that an *assumed name* appoint a registered agent. The Court does not even know what it would mean for an assumed name to appoint a registered agent, given that, again, an assumed name is not a legal entity, but merely a label.

Third, under the assumed-name statute, a person who carries on business under an assumed name must provide an address to the Secretary of State, but that address is not the address of the "registered office" of a "registered agent" for purposes of Minn. Stat. § 5.25, subd. 4(a)(2). Rather, a person who carries on business under an assumed name must provide the "business address under which [that] business is conducted or transacted." Minn. Stat. § 333.01, subd. 1.

Finally, because an assumed name is not itself a legal entity, it cannot serve as the registered agent of a legal entity. Clearly, then, AWL was *not* the "registered agent" of Countrywide, and thus the Wayzata Boulevard address to which DeVary refers was *not* the

"registered office" of Countrywide's "registered agent" for purposes of Minn. Stat. § 5.25, subd. 4(a)(2). It is thus irrelevant that DeVary discovered the address to be vacant.

In sum, based on the evidence submitted to the Court, a reasonable jury could not find that Countrywide had "fail[ed] to appoint or maintain in this state a registered agent upon whom service of process may be had." Minn. Stat. § 5.25, subd. 4(a)(1). To the contrary, a reasonable jury would have to find that, at all relevant times, CT Corporation was acting as Countrywide's registered agent in Minnesota. Moreover, based on the evidence submitted to the Court, a reasonable jury could not find that CT Corporation "[could not] be found at its registered office in this state." Minn. Stat. § 5.25, subd. 4(a)(2). DeVary has submitted no evidence — much less the "return of the sheriff of the county in which the registered office is situated" or "affidavit of attempted service by a person not a party" required by the statute — that CT Corporation could not be found in its registered office in Minnesota.[4]

Because DeVary was not authorized under Minn. Stat. § 5.25 to serve Countrywide through the Secretary of State, and because DeVary did not attempt to serve Countrywide in any other manner, DeVary failed to serve the summons and complaint upon Countrywide within one year after Countrywide allegedly acted unlawfully in refusing to rescind DeVary's loan. As a result, DeVary's refusal-to-rescind claim against Countrywide is barred by the one-year limitations period of 15 U.S.C. § 1640(e).

---

[4]In fact, DeVary apparently had no difficulty finding CT Corporation when he mistakenly believed that CT Corporation was the registered agent of *MERS*. In his original complaint, DeVary identifies CT Corporation as MERS's "statutory agent," Compl. ¶ 8, and DeVary says that he attempted to serve MERS through CT Corporation on December 31, 2008, Aff. of Attempted Service [Docket No. 1-1 at 60]. According to DeVary, CT Corporation refused to accept service of process for MERS, saying it "was no longer employed as their registered agent." *Id*. (emphasis omitted). Obviously, then, DeVary was able to find CT Corporation.

*b. Count 2: Non-Rescission Claims for Damages Under TILA*

In addition to his claims stemming from Countrywide's refusal to rescind his loan, DeVary makes two other TILA claims. First, he claims that he was not provided with certain required disclosures at the time of closing and that his loan documents were otherwise deficient. Second, his amended complaint adds a new allegation that in September 2008, after he rescinded his loan, Countrywide solicited a $12,000 payment from him and misapplied it as interest.

DeVary's claim for damages stemming from alleged errors and omissions in his closing documents is time-barred because it was not brought against any defendant "within one year from the date of the occurrence of the violation" — that is, within one year from DeVary's closing. 15 U.S.C. § 1640(e). TILA provides an exception to the one-year statute of limitations when the statutory violation is raised "as a matter of defense by recoupment or set-off" in "an action to collect the debt," *id.*, but this recoupment exception cannot save DeVary's claim. "To qualify as recoupment a cause of action must be asserted defensively." *In re Smith,* 737 F.2d 1549, 1554 (11th Cir. 1984) (plaintiff's untimely claim for damages under TILA is not saved by § 1640(e)'s recoupment exception); *see also Basham v. Fin. Am. Corp.,* 583 F.2d 918, 928 (7th Cir. 1978) *cert. denied* 439 U.S. 1128 (1979) *and* 444 U.S. 825 (1979). This is not "an action to collect [a] debt" brought by defendants; no defendant has asserted a claim or counterclaim against DeVary. Rather, this is an action to collect damages brought by DeVary. Clearly, then, DeVary's TILA claims are not asserted defensively. Therefore, the Court will dismiss DeVary's TILA claims insofar as they allege that TILA was violated by acts or omissions that occurred at the time of closing.

The Court will not, however, dismiss DeVary's newly added claim that Countrywide violated TILA by improperly soliciting a $12,000 payment in September 2008 and "subsequently" misapplying that payment as interest. Amended Compl. ¶ 35. This claim may very well be time-barred, but the claim was presented for the first time in DeVary's amended complaint, and that amended complaint was filed after the parties had already briefed defendants' motion to dismiss. Defendants may later move to dismiss this claim, and the Court will rule on that motion after receiving full briefing and, if necessary, hearing oral argument.

### 3. Count 3: RESPA

DeVary claims that Countrywide is liable under RESPA for not responding appropriately to DeVary's numerous requests for information about his loan and other topics. Defendants move to dismiss DeVary's RESPA claim. The Court denies defendants' motion without prejudice, because the parties have failed to brief this issue adequately. If defendants wish to renew their motion to dismiss the RESPA claim, defendants should, in their brief in support of their motion, identify *every* request for information made by DeVary — numbered and unnumbered — and explain *exactly* why defendants were not required to respond to that request under RESPA (or identify how defendants did respond to that request). In his brief in opposition to defendants' motion, DeVary should explain — on a request-by-request basis — *exactly* why defendants were required to respond to the request, and exactly why the information that defendants provided (if any) fell short of their obligations under RESPA. In explaining why defendants were or were not required to respond to a particular request, the parties should cite authority — such as specific subsections of RESPA, specific subparts of regulations, or specific language from judicial opinions — supporting their contentions.

At this point, without adequate briefing, the Court is able to form some impressions about DeVary's RESPA claim, but the Court is not in a position to make definitive rulings. To guide the parties, though, the Court shares its initial impressions:

RESPA is a consumer-protection statute that imposes certain obligations and prohibitions on loan servicers (as distinct from loan owners) with respect to the loans that they service. RESPA requires a servicer to, *inter alia*, respond to a borrower's request for certain types of information. RESPA does not require a servicer to respond to any question that a borrower may ask — no matter how broad, vague, or far afield.

Under RESPA, loan servicers are only required to respond to any "qualified written request from the borrower . . . for information relating to the servicing of [his] loan . . . ." 12 U.S.C. § 2605(e)(1)(A). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required . . . ." 12 U.S.C. § 2605(i)(3). A request for information is not a QWR — and thus need not be answered under RESPA — if it does not "provide[] sufficient detail to the servicer regarding . . . information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

A servicer must acknowledge receipt of a QWR within 20 business days. 12 U.S.C. § 2605(e)(1)(A). Within 60 business days of receiving a QWR, the servicer must either (1) make and inform the borrower of appropriate corrections to the borrower's account; (2) provide the borrower a written explanation of why the servicer believes the account is correct, and provide the name and phone number of an employee or department that can provide further assistance; or

(3) provide the information requested by the borrower or provide an explanation for why that

information will not be provided, along with a name and phone number of a person or

department that can provide further assistance. 12 U.S.C. § 2605(e)(2).

DeVary sent his purported QWRs to Countrywide in late December 2007 or early January

2008. *Compare* Compl. ¶ 30 (letter sent "[o]n or about December 28, 2007") *with* Compl. Ex. 4

at 1 (handwritten notation on letter reading "mailed out certified 2 day [indecipherable] on 1-3").

DeVary does not allege that Countrywide's initial letter acknowledging receipt of his QWRs was

untimely under RESPA's 20-day time limit. Within 60 days of receiving DeVary's letter,

Countrywide provided substantive responses to DeVary's inquiries. Countrywide provided

information and enclosed additional responsive documents in response to five of DeVary's

numbered requests (requests 1, 3, 7, 10, and 12), as well as contact information for an individual

who could provide additional assistance. Countrywide further stated that it was not required to

provide the information requested by DeVary in the remaining 19 numbered requests because

DeVary did not allege wrongdoing by Countrywide, and the requested information did not relate

to the servicing of DeVary's loans. Countrywide said nothing about DeVary's three unnumbered

requests.

The Court tends to agree with Countrywide that, for the most part, the 19 numbered

requests that Countrywide did not answer were not QWRs, and thus Countrywide's failure to

respond to them does not subject Countrywide to RESPA liability. The majority of those

unanswered requests involve, variously, information relating to DeVary's closing (requests 2 and

15), loan-ownership issues (requests 4, 5, and 6),[5] general correspondence (request 8), and

securities-law disclosures (requests 1A-9A). Those requests appear to have nothing to do with

servicing — receiving scheduled, periodic payments from DeVary and applying those payments

to principle, interest, or other charges — and thus seem not to be subject to § 2605(e)'s duty to

respond to a borrower's QWR.

Two of DeVary's other requests (requests 13 and 14) are largely incomprehensible and

thus at least arguably fail to provide "sufficient detail to the servicer regarding . . . information

sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii). To the extent that the Court can

understand those requests, they seem to seek information regarding Countrywide/AWL's

financing of the original loan, rather than information regarding the servicing of that loan. If the

Court is correct, these requests would not be covered by RESPA.

That said, two of the numbered requests to which Countrywide did not provide a

substantive response (requests 9 and 11) may relate to the servicing of DeVary's loan and thus

may be QWRs. Specifically, DeVary requested:

> "All accounting ledger cards, journal entries and/or bookkeeping
> entries regarding the crediting of any and all Promissory Notes,
> money equivalents, or similar instruments identified as or
> evidencing assets provided by and/or signed by the borrowers and
> consumers relating to this Account," Compl. Ex. 4 at 3 (request 9);
> and
>
> "A copy of all account receivables or payable relating to this
> Account that America's Wholesale Lender recorded in its

_____

[5]Although it does not appear to be a RESPA violation, a servicer's failure to respond to a
borrower's written request for certain information related to loan ownership may constitute a
TILA violation, 15 U.S.C. § 1641(f)(2). However, DeVary did not plead such a violation in his
amended complaint.

accounting ledger card and bookkeeping journal entries," *id*. at 4 (request 11).

These two requests are arguably related to the servicing of DeVary's account. It is not clear to the Court whether RESPA entitles a borrower to copies of specific internal documents, or instead merely to the information that those documents contain. But neither party has briefed that issue. If the documents that DeVary described in requests 9 and 11 are covered by § 2605(e), Countrywide was required to respond either by providing the requested documents or by informing DeVary in writing that they were "unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(C)(i). Countrywide did neither. Instead, Countrywide informed DeVary that it was not required to respond to his requests. It is thus possible that Countrywide violated RESPA with respect to requests 9 and 11.

DeVary also made three unnumbered requests. First, he requested information regarding current ownership of the loan. Second, he requested that, if Countrywide did not believe itself to be bound by certain policies and procedures, Countrywide provide him "a statement under oath verifying this material fact including documentary evidence." Compl. Ex. 4. Third, he requested that if Countrywide believed it had made "all material disclosures," that it provide "a verified complete copy of this document which discloses the material elements including the amount and date I was notified of these material facts." *Id*.

These requests do not appear to be QWRs, and thus it does not appear that Countrywide was obligated under RESPA to respond to them. At no point in his letter did DeVary explicitly "disput[e] any further application of finance or other charges due to the rescission," as he claims in his briefing. DeVary Opp. Dismiss at 11. Nor did he specify how he believed his account was

-21-

in error, Compl. ¶ 56, apart from generally asserting that he was entitled to rescind and that the documents that he had received at closing were not "true" or "correct."  His rescission letter, unlike his amended complaint, did not allege that Countrywide had inaccurately stated or improperly applied finance charges.  Such disputes, if raised, arguably would have constituted QWRs to which Countrywide would have been required to respond.  But Countrywide cannot be faulted for failing to respond to a QWR that was never made.

DeVary's other RESPA claims appear to be meritless.  DeVary has not cited, and the Court cannot find, any authority supporting his contention that Countrywide's failure to honor his rescission request constitutes a RESPA violation (as opposed to a TILA violation).  To the contrary, federal courts have held that failure to act on a notice of rescission does *not* subject a servicer to RESPA liability.  *See Taylor v. Nelson*, No. Civ.A. 02-6558, 2006 WL 266052, at *14 (E.D. Pa. Jan. 31, 2006); *Sorenson v. Countrywide Home Loans, Inc.*, No. 2:09-cv-01943-MCE-KJM, 2010 WL 308794, at *6 (E.D. Cal. Jan. 12, 2010).

Furthermore, DeVary most likely cannot recover on his claim that Countrywide violated RESPA by improperly reporting adverse information to a consumer-reporting agency.  Compl. ¶ 59.  RESPA does temporarily prohibit a servicer that has received a QWR "relating to a dispute regarding the borrower's payments," 12 U.S.C. § 2605(e)(3), from reporting "information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request," *id*.  But it seems unlikely that any QWR submitted by DeVary "relat[ed] to a dispute regarding [his] payments."  Instead, DeVary's letter notified Countrywide that he wished to rescind his loan and made a series of requests for information.  It does not appear that

Countrywide violated RESPA by reporting negative information about DeVary to a consumer-reporting agency.

In his amended complaint, DeVary also claimed for the first time that Countrywide violated RESPA when it refused to refrain from collection efforts and foreclosure proceedings after receiving his notice of rescission and QWRs. Amended Compl. ¶ 62. The Court notes that, according to RESPA's implementing regulations, the temporary prohibition on reporting negative information to consumer-reporting agencies "does not impede a lender or servicer from pursuing any of its remedies, *including initiating foreclosure*, allowed by the underlying mortgage loan instruments." 24 C.F.R. § 3500.21(e)(4)(ii) (emphasis added). But because the parties did not have an opportunity to address this claim in their briefing, the Court is not in the position to express even tentative conclusions about the viability of the claim.

### 4. Count 4: Minnesota Deceptive Trade Practices Act

The MDTPA defines several types of activities as deceptive trade practices. Minn. Stat. § 325D.44. An individual who has been harmed by a deceptive trade practice may bring a civil action under Minnesota's private-attorney-general statute. Minn. Stat. § 8.31, subd. 3a. The Minnesota Supreme Court has held that because private plaintiffs' enforcement authority derives from that of the attorney general, private plaintiffs must "demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

The Court agrees with defendants that DeVary cannot sue for violation of the MDTPA because he is not suing to obtain a public benefit. Nothing in DeVary's amended complaint suggests that defendants' alleged violations of TILA or RESPA have harmed anyone other than DeVary or are part of a broader pattern of illegal conduct. A misrepresentation made to only one

person as part of a single transaction simply does not support a private-attorney-general action under the MDTPA. *Id.* at 314. "The class of plaintiffs under the private attorney general statute would be limitless if we assumed that one individual's negative experience with a company was necessarily duplicated for every other individual and on that basis treated personal claims as benefitting the public." *Davis v. U.S. Bancorp*, 383 F.3d 761, 768 (8th Cir. 2004).

Defendants further argue that DeVary's amended complaint does not satisfy the particularity requirement of Rule 9(b). The Court agrees. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." This rule applies equally to claims brought under the MDTPA and to common-law fraud claims. *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs. Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (internal citations omitted).

It is not clear from DeVary's amended complaint exactly who committed fraud, exactly how that person committed fraud, or exactly when that person committed fraud. DeVary's amended complaint speaks generally of "unlawful, unfair and fraudulent business practices," Amended Compl. ¶ 68, avers that the offending acts "affect inclusively trade and commerce, and affect sponsorship of goods and services in Minnesota," *id.* ¶ 69, and alleges that defendants "have committed acts of unfair competition" and violated various statutory and contractual duties "to such extent as to induce confusion of source, sponsorship of services, and rescission rights of Plaintiff," *id.* ¶ 71-72. These and similar allegations contained in the amended complaint are

vague and conclusory statements cribbed from § 325D.44's list of deceptive trade practices. Merely reciting portions of the statute does not come close to satisfying Rule 9(b)'s particularity requirement.

For all of these reasons, Count 4 of DeVary's amended complaint is dismissed.

### C. Motion for Default Judgment

DeVary argues that, because neither Countrywide nor MERS filed an answer to his amended complaint within the time prescribed by Rule 12(a)(1), they are in default, and a default judgment should be entered against them.[6]  DeVary attaches to his brief a copy of an October 28, 2009 letter from his attorney to defendants' attorney, in which DeVary's attorney purports to extend until November 2, 2009, the deadline by which defendants must answer the amended complaint.  Docket No. 33-1.  In response to DeVary's motion, defendants point out that they filed their answer on November 5, 2009, and thus missed the attorney-extended deadline by only three days.  That delay was short, defendants argue, and DeVary was not prejudiced by it.  Both parties are confused about the Federal Rules of Civil Procedure.

First, the Court reminds counsel for both plaintiff and defendants that, under the Federal Rules of Civil Procedure, "[p]arties may not agree to extend the deadline for a defendant to file its answer without approval by the Court pursuant to Fed. R. Civ.  P. 6(b)."  *EEOC v. Mothers Work, Inc.*, No. SA04CA0873-XR, 2005 WL 465400, at *1 (W.D. Tex. Feb. 28, 2005); *see also In re Sonoma V*, 703 F.2d 429, 431 (9th Cir. 1983) ("Under Fed. R. Civ. P. 6(b) the parties may not agree to an extension of time without court approval."); *In re Lease Oil Antitrust Litig. No. II*, 48 F. Supp. 2d 699, 707 (S.D. Tex. 1998) ("Under Federal Rules of Civil Procedure 6(b), 'the

_____

[6]DeVary did not name Bank of New York in his default-judgment motion.

parties may not agree to an extension of time without court approval.'" (citation omitted));

*Segars v. Hagerman*, 99 F.R.D. 274, 276 (N.D. Miss. 1983) ("At bottom, it matters little whether plaintiff's counsel agreed to an extension of thirty days or three hundred; the time within which to file an answer is fixed by Fed. R. Civ. P. 12(a) and cannot be enlarged except by court order.").

Second, defendants are not in default because, as explained above, both brought a timely Rule 12(b)(6) motion to dismiss DeVary's original complaint, and that motion automatically "transferred" to DeVary's amended complaint when that amended compliant was filed. Because defendants had pending a Rule 12(b)(6) motion seeking to dismiss the amended complaint, they were not obligated to answer the amended complaint until after their motion was denied. *See* Fed. R. Civ. P. 12(a)(4)(A) and 15(a)(3). Their motion was not denied until today. Defendants have already filed an answer to the amended complaint [Docket No. 36], but, even if they had not, defendants would now have 14 days to do so.

Finally, even if defendants had failed to file a timely answer to the amended complaint, the Court could not enter a default judgment against them under Rule 55(b) because the Clerk of Court has not entered the defendants' default under Rule 55(a). DeVary wrongly failed to seek entry of default against either Countrywide or MERS before moving for a default judgment.

For all of these reasons, DeVary's motion for a default judgment is denied.

### D. Motion for Judicial Notice

DeVary asks this Court to take judicial notice of several "facts" relating to his attempt to serve the summons and complaint on Countrywide, including "the Minnesota Secretary of State Log Sheet corresponding to the Certified Mail number, the delivery, the delivery record of the United States Postal Service corresponding to the Certified Mail number noted on the Log Sheet

assigned to Plaintiff's original Summons and Complaint and the attached Affidavit of Plaintiff's counsel." Mot. Judicial Notice ¶ 5 [Docket No. 49]. DeVary also asks the Court to take judicial notice of such things as the "fact" that neither Countrywide nor MERS was found by his attorney to have a registered agent in Minnesota, Fourth Keogh Aff. ¶ 13 [Docket No. 50], the "fact" that "Defendant" (presumably AWL) failed to maintain its "registered office of record," *id*. ¶ 14, and the "fact" that Countrywide was served with DeVary's summons and complaint, *id*. ¶ 15.

There are several problems with DeVary's motion:

First, DeVary's motion is a thinly veiled attempt to avoid the deadlines imposed on the parties by this Court's Order of November 9, 2009. In that Order, the Court directed the parties to complete "discovery relating to the question whether Countrywide was properly served with the initial complaint" by December 31, 2009, and to submit briefs addressing that issue (as well as other issues) by January 4, 2010. Docket No. 38. The Court explicitly warned the parties "that it will not extend either the December 31, 2009 deadline for conducting service-related discovery or the January 4, 2010 deadline for submitting briefs." *Id*. Although DeVary filed a supplemental brief on January 4, he submitted almost no new evidence in support of his argument that he properly served Countrywide. Apparently, DeVary continued to investigate the case, found evidence that he thought would be helpful, and, realizing that January 4 had come and gone, concocted a "motion to take judicial notice" so that he could file his new evidence. DeVary acted improperly, and that is sufficient reason for denying his motion.

Second, DeVary does not seem to understand the scope of Rule 201 of the Federal Rules of Evidence. A court may take judicial notice only of a fact that is "not subject to reasonable dispute" because "it is either (1) generally known within the territorial jurisdiction of the trial

court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Many of the "facts" that DeVary wants this Court to judicially notice — such as the "fact" that DeVary's attorney was unable to find a registered agent for Countrywide in Minnesota — are far outside the scope of Rule 201. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 830 (8th Cir. 2003).

Finally, even assuming that some of the proposed "facts" proffered by DeVary were within the scope of Rule 201 — and even assuming that DeVary was not using his "motion to take judicial notice" as a way of evading this Court's November 9 Order — the Court would still not take judicial notice of those "facts" because none of them would change the Court's conclusion that DeVary was not authorized to serve Countrywide through the Minnesota Secretary of State. For example, whether the Secretary of State in fact mailed the summons and complaint to Countrywide is irrelevant to the question of whether Minn. Stat. § 5.25 *authorized* the service of Countrywide through the Secretary of State. *See Peirce v. Homecomings Fin. Network, Inc.*, Nos. A04-1601 & A04-1698, 2005 WL 1545381, *4 (Minn. App. July 5, 2005); Service of Process Acknowledgment, Second Keogh Aff. Ex. 4 (form issued by Secretary of State to those attempting service under Minn. Stat. § 5.25 warning that "[s]ubstituted service of process through the Office of the Secretary of State does not guarantee that the service will be sufficient . . . .").

For all of these reasons, DeVary's motion to take judicial notice is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff Jon E. DeVary's motion to remand [Docket No. 4] is DENIED.

2. The motion of defendants Countrywide Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc. to dismiss [Docket No. 10] is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART. Specifically,

   a. The motion to dismiss Count 1 is GRANTED insofar as it seeks dismissal of Count 1 against defendant Countrywide Home Loans, Inc. and DENIED WITHOUT PREJUDICE insofar as it seeks dismissal of Count 1 against defendant Mortgage Electronic Registration Systems, Inc. Count 1 against defendant Countrywide Home Loans, Inc. is DISMISSED WITH PREJUDICE AND ON THE MERITS.

   b. The motion to dismiss Count 2 is GRANTED, except that it is DENIED WITHOUT PREJUDICE insofar as it seeks dismissal of the claim in Count 2 that defendants violated the Truth in Lending Act by improperly soliciting a $12,000 payment and misapplying that payment as interest. Count 2 against defendants Countrywide Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc. is DISMISSED WITH PREJUDICE AND ON THE MERITS, except insofar as it asserts that defendants violated the Truth in Lending Act by improperly soliciting a $12,000 payment and misapplying that payment as interest.

   c. The motion to dismiss Count 3 is DENIED WITHOUT PREJUDICE.

   d. The motion to dismiss Count 4 is GRANTED and Count 4 against defendants Countrywide Home Loans, Inc. and Mortgage Electronic

Registration Systems, Inc. is DISMISSED WITH PREJUDICE AND ON THE MERITS.

3.      Plaintiff Jon E. DeVary's motion for default judgment [Docket No. 31] is DENIED; and

4.      Plaintiff Jon E. DeVary's motion to take judicial notice [Docket No. 49] is DENIED.

Dated:  March _25_, 2010

s/Patrick J. Schiltz_____
Patrick J. Schiltz
United States District Judge